## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VICTORIA WILCOX, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

TARGET CORPORATION,

Defendant

6:23-cv-02339-JSS-RMN

First Amended
Class Action Complaint

Jury Trial Demanded

Plaintiff Victoria Wilcox ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.    CONSUMER DEMAND FOR NATURAL FLAVORS

1.    According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

2.    Nielsen reports that the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

3.    The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these

---

[1] Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

synthetic ingredients.[2]

4.    Mintel concluded that avoidance of artificial flavors is just as strong as consumers' desire for natural flavors, in "Artificial: Public Enemy No. 1."[3]

5.    Surveys by Nielsen, New Hope Network, and Label Insight confirmed that upwards of eighty percent of the public tries to avoid artificial flavors, believing them to be potentially unhealthy and contributing to a wide range of maladies.

6.    Over eighty percent of them believe foods with artificial flavors are less healthy than those with only natural flavors.

7.    One expert noted that "When [consumers] think about whether a food is healthy or not, [they] likely consider whether or not it has the word 'artificial' in the ingredients list."

## II.   LEGAL BACKGROUND

8.    Over 100 years ago, consumers were similarly concerned, based on the reports of muckraking journalists, about the harmful and untested chemicals that were added to their food.

9.    In response to that unregulated environment where synthetic molecules

---

[2] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

[3] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit Into Our Health-Conscious World, Mar. 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

were manufactured in laboratories and substituted for the wholesome and natural ingredients promoted to consumers, the Pure Food and Drug Act of 1906 required disclosure of artificial flavoring to ensure the public would get what they paid for.

10.   These requirements were strengthened by the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq.*

11.   Florida adopted these laws through the Food Safety Act ("FSA") and accompanying regulations. Fla. Stat. § 500.01 *et seq.*; Fla. Stat. § 500.02(2) ("Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA]."); FL Admin Code § 5K-4.002(1)(d) (adopting 21 C.F.R. Parts 101 and 102).

12.   The newly established Food and Drug Administration ("FDA") was aware of how companies used advanced scientific knowledge to substitute dangerous and unhealthy flavoring chemicals in place of promoted ingredients like fruits and natural fruit flavors.

13.   Beyond the potential to cause physical harm, these synthetic substances were significantly cheaper than the fruits and natural fruit flavors they replaced.

14.   The FDA knew that "consumers initially [] rely on extrinsic cues such as

visual information on labels and packaging" to make quick purchasing decisions.[4]

15.   To facilitate an honest marketplace, it required that the source of a food's taste, whether the pictured ingredients, natural flavors from those ingredients, or synthetic sources, be conspicuously disclosed. 21 C.F.R. § 101.22(i)(1).

16.   This was "premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[5]

17.   To reach this goal, the FDA defined a flavor as a substance which imparts taste. 21 C.F.R. §§ 101.22(a)(1) and (3).

18.   "Natural flavor" was made from the "essential oil, oleoresin, essence or extractive" from fruits or vegetables. 21 C.F.R § 101.22(a)(3).

19.   In contrast, "artificial flavor" was from synthetic or chemical sources. 21 C.F.R § 101.22(a)(1).

---

[4] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.
[5] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

## III.  FLAVOR OF FRUITS AND APPLES

20.  In developing lower cost artificial fruit flavors to replace natural fruit flavors, companies sought to better understand taste, the combination of sensations arising from specialized receptor cells in the mouth.[6]

21.  This was challenging because of the varieties of "taste," i.e., the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

22.  Each of those acids is responsible for unique sensory characteristics of sourness.

23.  Fruit flavors, including the flavor of apples, are the sum of the interaction between their nonvolatile compounds, such as sugars and organic acids, and volatile compounds, including aromatic hydrocarbons, aldehydes, ketones and esters.

24.  The prototypical tart, sour and sweet taste of apple is based on the interaction of its free sugars, glucose and fructose, with its main organic acid of malic acid and secondary organic acids of tartaric acid and fumaric acid, to create its unique tart, sour, sweet and/or fruity flavor.[7]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |

---

[6] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[7] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| | | |
|---|---|---|
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

25.    The naturally occurring L-Malic Acid is what gives apples their characteristic tart, sour and sweet taste that is valued by consumers.

26.    The amount and proportion of malic acid is a critical factor in producing this preferred tart, sour and sweet apple taste.

27.    Malic acid is often referred to as "apple acid," with the word malic derived from the Latin mālum, for which Malus, the genus that contains all apple species, is named.

## IV.  DESPITE PROMOTING APPLES AND NATURAL FLAVOR, TASTE COMES FROM ARTIFICIAL FLAVORING

28.  According to Paul Manning, president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[8]

29.  To capture this trend, Target Corporation ("Defendant") sells cereal bars which purport to be filled with apples, cinnamon and natural flavoring, under its Market Pantry brand ("Product").



30.  The labeling is false and misleading because despite the statements of

---

[8] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

"Naturally Flavored Apple Cinnamon [Soft Baked Breakfast Bars]" and "Made With Real Fruit Filling," a green stripe at the bottom of the package and pictures of three fresh green apple slices and two cinnamon sticks, the Product contains artificial flavoring ingredients to simulate, resemble and reinforce its apple taste.

31.   This is not disclosed on the front label or the fine print on the back in the ingredient list.

32.   While the ingredient list in fine print indicates the fruit filling contains apples and natural flavor, it also includes the synthetic form of malic acid.



**INGREDIENTS:** CRUST (WHOLE OAT FLOUR, ENRICHED BLEACHED FLOUR […] LIQUID WHOLE EGGS), APPLE AND CINNAMON FLAVORED FILLING (SUGAR, WATER, APPLE PUREE, GLYCERIN, CORN SYRUP, MALTODEXTRIN, APPLE POWDER, PECTIN, CINNAMON, XANTHAN GUM, MALIC ACID, CITRIC ACID, SODIUM ALGINATE, DICALCIUM PHOSPHATE, SODIUM CITRATE, MONO & DIGLYCERIDES, ASCORBIC ACID – A PRESERVATIVE, POTASSIUM SORBATE – A PRESERVATIVE, CALCIUM STEARATE, NATURAL FLAVOR).

33.   Since the ingredients are listed in order of predominance by weight, listing "Malic Acid" before "Natural Flavor" means the filling contains more

artificial apple flavor than natural apple flavor. 21 C.F.R. § 101.4(a)(1).

A. Two Types of Malic Acid

34.    Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

35.    These are right and left-hand versions of the same molecular formula.[9]



36.    L-Malic Acid occurs naturally in apples and is responsible for their characterizing tart, sour and sweet taste.

37.    D-Malic Acid does not occur naturally anywhere.

38.    D-Malic Acid is found as a racemic mixture of the D and L isomers, or DL-Malic Acid.

39.    The production of DL-Malic Acid begins with petroleum.

40.    It involves a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at 180°C.

41.    This results in an equilibrium mixture of malic and fumaric acids.

---

[9] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

42.   The soluble fumaric acid is filtered off and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

B. Distinguishing L- from DL- Malic Acid

43.   Since the two types of malic acid are closely related, unscrupulous companies may replace naturally occurring L-Malic Acid with the lower cost and synthetic DL-Malic Acid.

44.   However, the scientific community has developed methods to detect this kind of adulteration.

45.   According to Wilhelmsen, adulteration involving the direct addition of foreign substances can be determined where there exist (1) well-defined detection limits, (2) sufficiently validated detection methods, and (3) knowledge the adulterant and/or any markers are not found in the food.[10]

46.   This is because any detection is indicative of adulteration, without complicated statistical or other analysis.

47.   Since plants do not synthesize D-Malic Acid, its presence in certain foods above established thresholds indicates this artificial version has been added.

48.   The most accepted method to determine if a food contains DL-Malic Acid is based, in part, on European Standard ("EN") 12138:1997, developed by the

---

[10] Eric C. Wilhelmsen, "Food Adulteration," in Food Science and Technology, Marcel Dekker (2004).

European Committee for Standardization ("CEN"), for the enzymatic determination of the total content of D-Malic Acid in fruit juices and related products.[11]

49.   This enzymatic approach is based on D-malate dehydrogenase ("D-MDH"), an enzyme that oxidizes D-Malic Acid ("D-malate") to pyruvate and carbon dioxide in the presence of an appropriate cofactor.

50.   D-malate is oxidized by nicotinamide adenine dinucleotide ("NAD") to oxaloacetate.

$$\text{D-malate} + \text{NAD} \xrightarrow{+ \text{D-MDH}} \text{pyruvate} + CO_2 + \text{NADH} + H^+$$

51.   The oxaloacetate formed by this reaction is split into pyruvate and carbonic acid.

52.   The quantity of NADH formed is proportional to the concentration of D-Malic Acid and measured at a wavelength of 334, 340 or 365 nm.

53.   Laboratory analysis of the Product's filling was performed based on this enzymatic method in accordance with accepted industry standards and protocols.

54.   Applying D-MDH, D-Malic Acid was preferentially oxidized over L-Malic Acid.

55.   The result was that the synthetic D-isomer of Malic Acid was identified above the appropriate threshold for this method, indicating the Product used

---

[11] SIST EN 12138:1998, Fruit and Vegetable Juices – Enzymatic Determination of D-Malic Acid Content – NAD Spectrometric Method.

artificial, DL-Malic Acid and not L-Malic Acid.

56.   This confirmed the Product contains more artificial apple flavor than natural flavors, because malic acid is listed ahead of natural flavor on the ingredient list.

57.   The combination of DL-Malic Acid with the free sugars from apples is not equivalent to the taste of apples and natural flavors.

58.   The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the characteristic tart, sweet and sour taste that apples are known for.

59.   DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from petroleum, made through chemical reactions.

60.   DL-Malic Acid is an artificial flavoring ingredient.

61.   DL-Malic Acid does not supplement, enhance, or modify the original taste of apples, because it is the core component of their taste. 21 C.F.R. § 170.3(o)(11).

## V.   "NATURALLY FLAVORED" DESCRIPTION IS MISLEADING

62.   The consumer protection statutes of Florida are based on the standards of the Federal Trade Commission ("FTC"), which recognizes the effect of advertising includes not just representations made or suggested by words and

images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

63.   Relevant laws consider not only representations made or suggested by statements and images, but also the extent to which they fail to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which are of material interest to consumers.

64.   The Product is "misbranded" and misleads consumers because its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(a).

65.   The Product's labeling fails to prominently and conspicuously reveal facts relative to the proportions or absence of apples, natural flavors and artificial flavors.

66.   This is because "Naturally Flavored Apple Cinnamon" tells consumers the filling's taste is from apples and cinnamon and natural flavors, even though it is provided in part by DL-Malic Acid, an artificial flavoring ingredient.

67.   The replacement of apples and natural flavor with DL-Malic Acid, an artificial flavoring ingredient, is of material interest to consumers, because (1) these ingredients cost more than manufactured chemical compounds and (2) because consumers seek to avoid artificial flavors for reasons related to health, nutrition, and

a desire for natural ingredients.

68.   The failure to disclose the source of the Product's apple taste misleads consumers who expect its taste to come only from apples and natural flavors.

69.   The Product is "misbranded" and misleading because the cereal bars are identified as "Naturally Flavored Apple Cinnamon," which includes or suggests the ingredients of apples and cinnamon and natural flavors, but does not include artificial flavors, even though malic acid is identified on the ingredient list in fine print, notwithstanding it is not identified as an artificial flavoring ingredient. 21 U.S.C. § 343(a)(1); Fla. Stat. § 500.11(1)(a); 21 C.F.R. § 101.18(b).

70.   The Product is "misbranded" and misleading because "Naturally Flavored Apple Cinnamon Soft Baked Breakfast Bars" is not a truthful or non-misleading "common or usual name." 21 U.S.C. § 343(i); Fla. Stat. § 500.11(i)(1).

71.   "Naturally Flavored Apple Cinnamon Soft Baked Breakfast Bars" does not "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d); 21 C.F.R. § 101.3(b)(2).

72.   This is because the Product's "common or usual name" fails to disclose the source of its apple taste, based on the presence of DL-Malic Acid, an artificial flavoring ingredient which imparts the taste of apples. 21 C.F.R. § 101.22(i)(2).

73.   Federal and state regulations require that because the filling's taste is

represented as "Apple Cinnamon," yet contains DL-Malic Acid that imparts the flavor of apples, "Apple Cinnamon" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Apple Cinnamon Flavored" or "Artificially Flavored Apple Cinnamon." 21 C.F.R. § 101.22(i)(2).

74.   Instead, "Apple Cinnamon" is directly below the term, "Naturally Flavored," when this is false and misleading, based on the use of DL-Malic Acid, an artificial flavoring ingredient, to provide an apple taste.

75.   The Product is "misbranded" and misleading because even though it is required to conspicuously display that its apple taste is provided by artificial flavoring, it fails to disclose this anywhere. 21 U.S.C. § 343(f); Fla. Stat. § 500.11(1)(f).

76.   The Product is "misbranded" and misleading because it includes artificial flavoring in the form of DL-Malic Acid but "it [does not] bear[s] labeling stating that fact." 21 U.S.C. § 343(k); Fla. Stat. § 500.11(1)(k).

## VI.  CONCLUSION

77.   By adding the synthetic ingredient of DL-Malic Acid, purchasers do not receive a product that it "Naturally Flavored," but one that is artificially flavored.

78.   The Product could have included more of the highlighted fruit ingredient of apples, L-Malic Acid from apples or more natural flavoring from sources other than apples, but used artificial DL-Malic Acid because it cost less and/or more

accurately imparted, provided, simulated, resembled, and reinforced the taste of apples.

79. By adding the synthetic ingredient of DL-Malic Acid, purchasers get a smaller amount of apple and natural flavor than what is promised by the front label.

80. Consumers buying fruit filled cereal bars labeled as naturally flavored without any indication that artificial flavoring supplies the filling's taste are seeking to avoid synthetic ingredients like DL-Malic Acid, created in a laboratory.

81. As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately $2.59 for eight bars, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

82. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

83. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

84. Plaintiff is a citizen of Florida.

85. Defendant is a citizen of Minnesota based on its corporate formation.

86. Defendant is a citizen of Minnesota based on its principal place of business.

87. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

88. The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at the approximately 127 Target stores in this State and online to citizens of this State.

89. The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from the approximately 127 Target stores in this State and online to citizens of this State.

90. Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from the approximately 127 Target stores in this State and online to citizens of this State.

91. Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

92. Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

93. Defendant has committed tortious acts outside this State by labeling the

Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

94.   Venue is in this District with assignment to the Orlando Division because a substantial part of the events or omissions giving rise to these claims occurred in Volusia County, which is where Plaintiff's causes of action accrued.

95.   Plaintiff purchased, paid money for or towards, used and/or consumed the Product in reliance on the representations and omissions identified here in Volusia County.

96.   Plaintiff first became aware the representations and omissions were false and misleading in Volusia County.

97.   Plaintiff resides in Volusia County.

## PARTIES

98.   Plaintiff Victoria Wilcox is a citizen of Volusia County, Florida.

99.   Defendant Target Corporation is a Minnesota corporation with a principal place of business in Minnesota.

100. Target is an American multinational retail corporation that operates

almost 2,000 big box retail stores throughout the nation, selling everything from furniture to electronics to groceries.

101. While Target sells leading national brands of products, it also sells many products under one of its private label brands, Market Pantry.

102. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

103. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

104. Products under the Market Pantry brand have an industry-wide reputation for quality.

105. In releasing products under the Market Pantry brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

106. Market Pantry gets national brands to produce its private label items due its loyal customer base and tough negotiating.

107. Private label products under the Market Pantry brand benefit by their association with consumers' appreciation for the Target brand overall.

108. That Market Pantry-branded products met this high bar was or would be proven by focus groups, which rated them above their name brand equivalent.

109. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Market Pantry] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

110. Private label products generate higher profits for retailers like Target because national brands spend significantly more on marketing, contributing to their higher prices.

111. The development of private label items is a growth area for Target, as they select only top suppliers to develop and produce Market Pantry products.

112. Plaintiff is like most consumers and prefers foods with natural ingredients and natural flavors.

113. Plaintiff is like most consumers and tries to avoid foods with artificial flavors, based on the belief they are potentially harmful, not natural and unhealthy.

114. Plaintiff is like most consumers and looks to the front label of foods to see what she is buying and to learn basic information about it.

115. Plaintiff is like most consumers and is accustomed to the front label of packaging telling them if what they are buying gets its taste from artificial flavoring.

116. Plaintiff is like most consumers and when she sees that a front label does not disclose artificial flavoring, she expects its taste is from the identified ingredients and/or natural flavoring.

117. Plaintiff is like most consumers and when she sees a label that tells her

a food is "Naturally Flavored," she does not expect its taste to be from artificial flavoring and/or that it will not contain artificial flavoring ingredients.

118. Plaintiff read, saw and relied on the label's statements of "Naturally Flavored Apple Cinnamon Soft Baked Breakfast Bars," "Made With Real Fruit Filling," the green stripe at the bottom of the package and pictures of three fresh green apple slices and two cinnamon sticks to expect the Product's filling got its taste from the identified ingredients of apple and cinnamon and natural flavoring.

119. Plaintiff relied on the omission of artificial flavoring from the front label as it related to the taste of the Product's filling.

120. Plaintiff did not expect that in addition to apples and natural flavor, the Product would use added artificial flavoring in the form of the synthetic compound of DL-Malic Acid to provide its apple taste.

121. Plaintiff did not expect that the Product would use DL-Malic Acid in place of adding more apples and natural flavoring.

122. Plaintiff purchased the Market Pantry Naturally Flavored Apple Cinnamon Soft Baked Breakfast Bars with the labeling identified here at Target stores in Volusia County and/or other counties in Florida between November 2019 and November 2023.

123. Plaintiff bought the Product at or exceeding the above-referenced price.

124. Plaintiff paid more for the Product than she would have had she known

its fruit filling's taste was from artificial flavoring instead of only from the highlighted ingredients and natural flavorings, as she would have paid less.

125. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

126. Plaintiff seeks to represent the following class:

> All persons in Florida who purchased the Product in Florida during the statutes of limitations for each cause of action alleged.

127. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

128. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

129. Plaintiff is an adequate representative because her interests do not conflict with other members.

130. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

131. Individual actions would risk inconsistent results, be repetitive and are

impractical to justify, as the claims are modest relative to the scope of the harm.

132. The class is sufficiently numerous and likely includes several hundred thousand people.

133. This is because Defendant operates 127 stores in the States Plaintiff is seeking to represent, which serve a population of over 20 million people.

134. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSE OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

135. Plaintiff incorporates by reference paragraphs 1-81.

136. The purpose of FDUTPA is to protect consumers against unfair and deceptive practices.

137. This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

138. Violations of FDUTPA can be based on other laws and standards related to consumer deception.

139. Violations of FDUTPA can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those

principles. 15 U.S.C. § 45 *et seq*.; Fla. Stat. § 500.02(2).

140. An FDUTPA violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*., are violated.

141. An FDUTPA violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

142. An FDUTPA violation can be based on public policy, established through statutes, laws, or regulations.

143. An FDUTPA violation can occur whenever any law, statute, rule, regulation, or ordinance, which proscribes unfair, deceptive, or unconscionable acts or practices, is violated.

144. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

145. In considering whether a product's label is misleading, it is required to consider not only representations made or suggested by statements, images, and/or design, but also the extent to which it fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain attributes, features, components, ingredients, and/or other relevant facts, which are of material interest

to consumers.

146. The labeling of the Product violated FDUTPA because the representations and omissions its filling's taste was only from the identified ingredients of apples, cinnamon and natural flavorings, when it contained added artificial flavoring in the form of DL-Malic Acid, was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

147. The labeling of the Product violated FDUTPA because the representations and omissions its filling's taste was only from the identified ingredients of apples, cinnamon and natural flavorings, when it contained added artificial flavoring in the form of DL-Malic Acid, was contrary to the Food Safety Act, which adopted the FFDCA and accompanying regulations.

| Federal | State |
|---|---|
| 21 U.S.C. § 343(a)(1) | Fla. Stat. § 500.11(1)(a) |
| 21 U.S.C. § 343(f) | Fla. Stat. § 500.11(1)(f) |
| 21 U.S.C. § 343(k) | Fla. Stat. § 500.11(1)(k) |
| 21 U.S.C. § 343(i) | Fla. Stat. § 500.11(1)(i) |
| 21 C.F.R. § 101.3(b)(2) | |
| 21 C.F.R. § 101.18(b) | Fla. Stat. § 500.02(2) |
| 21 C.F.R. § 101.22(i) | FL Admin Code § 5K-4.002(1)(d) |
| 21 C.F.R. § 101.22(i)(2) | |
| 21 C.F.R. § 102.5(a) | |

148. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food. Fla. Stat. § 501.203(3)(c).

149. Plaintiff believed the taste of the Product's fruit filling was only from the identified ingredients of apples, cinnamon and natural flavorings, even though it contained added artificial flavoring in the form of DL-Malic Acid.

150.  Plaintiff paid more for the Product and would not have paid as much if she knew that in addition to apples, cinnamon and natural flavorings, the filling's taste was from added artificial flavoring in the form of DL-Malic Acid.

151. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under FDUTPA, by paying more for it than she otherwise would have.

152. Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

153. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

26

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   June 28, 2024

Respectfully submitted,

/s/ William Wright
The Wright Law Office P.A.
515 N Flagler Dr Ste 350
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Counsel for Plaintiff*

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office P.A.

**Certificate of Service**

I certify that on June 28, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☐ | ☐ | ☐ | ☐ |

/s/ William Wright